Good morning, Your Honors, and may it please the Court, Roy Schneider on behalf of the petitioner, Mr. Deng Arej. Your Honors, Mr. Arej faces the prospect of being removed to a region of Africa that is riddled by ethnic conflict and religious persecution. Without assistance of counsel, he sought to reopen his removal proceedings in hopes of at least having a chance to avoid becoming yet another victim of the worsening humanitarian crises gripping that region. The BIA denied his motion as untimely, but in doing so, it committed clear legal error by failing to even consider the evidence of changed circumstances that Mr. Arej submitted in support of his otherwise untimely motion to reopen. Mr. Schneider, where is the petitioner now? The petitioner is living in Kentucky. He's not in custody? He is not in Kentucky. Where is he? He's in Kentucky. He's not currently in custody. Where is he, please? In Louisville, Kentucky. In a detention center? No. Do we have any information now, and I'll ask the government the same thing, as to whether either Sudan or South Sudan are taking people being removed from the United States? We do not, Your Honor. Okay. What legal question are we reviewing? We have no jurisdiction over criminal alien removals. Certainly we recognize that this court does not have jurisdiction to consider whether, in fact, Mr. Arej showed changed circumstances. But under this court's precedent, it is a legal error for the BIA to fail to consider relevant evidence of changed circumstances. Okay. Well, if that's the narrow issue that we have to review here, this case is very easy because it's clear the board considered it. Whether the board gave appropriate consideration is a question of fact. But it's plain as day on the face of this decision that the board considered it. So if that's the limits of our jurisdiction, we don't get beyond that. Respectfully, we would disagree, Your Honors. And, in fact, just looking at the BIA's decision, all it did was recognize that Mr. Arej had submitted additional evidence, and then it proceeded to conclude that that evidence did not show changed circumstances. But it did not connect the dots at all. It did not say. That's a question about whether the adequacy, the sufficiency, the content of the board's consideration of this issue. It's not an issue of ignoring it. The issue is plainly not ignored. It wasn't overlooked. It was addressed. And, you know, we can quarrel about whether the board gave it adequate consideration. And we can quarrel about the content of the consideration. But it's clearly there in two spaces in the order. Your Honor, respectfully, this court's precedents have found that it is legal error for the BIA not to give adequate consideration to evidence of changed circumstances. We've considered claims that the board ignored something. In other words, overlooked it, didn't address it. It's not there. Right. This is there. I mean, there's a there there. We can complain about its content. I would point the court to the decisions in Jing Zhang and Ji Cheng Ni, both of which were cited in our initial brief. And there, the BIA, for example, in Jing Zhang, quote, unquote, summarized evidence and arguments. But it rejected the motion to reopen without a, quote, adequate analysis of the record. And similarly, in Ji Cheng Ni, the BIA, quote, cataloged voluminous evidence presented in support of a motion to reopen. But nevertheless, this court remanded because its one and a half page explanation was still considered inadequate. And certainly, if those decisions were inadequate to allow this court to have confidence that the BIA actually considered the evidence, certainly the decision here would similarly be inadequate. Does the government want to deport him to Sudan or South Sudan? It's unclear from the briefs, Your Honor. They haven't decided? Well, certainly the notice of removal specifies Sudan. But the BIA's decision considered changed circumstances in either Sudan or South Sudan. So what was its conclusion? Its conclusion was that Mr. Al-Raj's evidence was insufficient as to either Sudan or – Wait, that his evidence was what? Insufficient to show changed circumstances in either Sudan or South Sudan. The BIA appears to have recognized that Mr. Al-Raj is actually a native of South Sudan. I don't understand the changed circumstances. I thought the issue was whether he is in much greater danger if he's deported to Sudan than to South Sudan. Is that what he's arguing or what you're arguing? The relevant consideration is whether he showed adequate changed circumstances to avoid the 90-day limitation on a motion to reopen. Well, forget changed circumstances. Isn't his basic argument that he is in much greater danger if he's sent to the north than to the south? Well, in fact, he would face a significant risk of danger in either place, Your Honor. But there's a difference, right? There is a difference. There's greater danger to him in the north because he's a Dinka, right? That would be in South Sudan, the ethnic conflict between Dinkas and Noors. In North Sudan, he faces the prospect of persecution because he's a Christian. He wants to go to South Sudan, right? Your Honor, it's unclear given how fluid the situation is. But what I would say is that if this court does remand to the BIA, and we think we are confident that if the BIA gave adequate consideration to his evidence that it could reopen and there would at least be the opportunity to correct any issues with the country that's specified in the notice of removal, it's not entirely clear whether Mr. Arej was given the opportunity to designate his country of removal. We listened to the IJ proceedings, and that was not discussed. And we, unfortunately, have not been able to get a clear answer from Mr. Arej as to where he would prefer to go. Has he indicated which country he wants to go back to? He has not, to us. Well, isn't that pertinent? He may have reasons for why he prefers the north to the south, conceivably vice versa. No, he prefers the south to the north, doesn't he? That would be my presumption. Again, we have not gotten a clear answer from him as to whether that is in fact the case. Why hasn't that issue been litigated? It's not been litigated. On appeal, certainly, it was not addressed because, again, the BIA found... It's all so confused. You'd think he would indicate which Sudan to be deported to if he's going to be deported. Yes. And then there'd be a determination by the Immigration Court and the Board of Immigration Appeals whether there was a compelling reason for that. Yes, and certainly... Why hasn't that happened? That's not happened. He represented himself in the IJ proceedings.  But again, it appears that the BIA recognized that, in fact, he was a native of South Sudan, and that's why it proceeded to consider the circumstances in that country as well. But it decided not to send him to South Sudan? It decided that his motion to reopen was untimely. So at this point, barring relief on appeal, it does appear that, based on the notice of removal, he'll be removed to Sudan, which, again, is not his country of citizenship. I see that I'm running into my time for rebuttal. Why did they... I didn't understand. Why did the Board or the Immigration Court... Why did they... Why did they care about whether it was timely or not? Again, the motion to reopen was filed well after the 90-day limitation. Yeah, so what? That was the one reason that the court gave for denying. Certainly, we recognize that there might have been other available bases upon which it could have ruled. Other available what? There were other bases upon which the BIA might have been able to dispose of his motion to reopen, but the one that it chose, again, was timeliness and only timeliness. Only timeliness. Right. Okay. Thank you, Your Honor. Okay, thank you very much, Mr. Schneider. Mr. Robbins? May it please the Court, Jonathan Robbins here on behalf of the Attorney General. Good morning, Your Honors. I think we probably need to clarify about where Petitioner can be removed to and where he can't. The removal order only states that he can be removed to Sudan. The agency does not have authority to remove him. Could you speak up, please? I'm sorry, Your Honor. The agency does not have authority to remove him to South Sudan. I can't hear you. The agency, what? Please don't mess with the microphones. Just raise your voice. Sorry. I apologize, Your Honor. They've been adjusted, so. Okay. There is no removal order to South Sudan. There's only one removal. There's no what? There is no removal order to South Sudan. There is only one removal order on the record, and that specifies that the petitioner may be ordered to Sudan. So he cannot be removed to South Sudan. Why not? Because there's no removal order authorizing it. Why not? Why wasn't there? That's where he was. Oh, because Petitioner did never claim to be a citizen of South Sudan. Well, he came from South Sudan. Correction, Your Honor. He was born in South Sudan, but he was moved as a child to North Sudan by his parents, according to his claim. And I will also point out that on his waiver of excludability, he claims that he was born in South Sudan but was a citizen of Sudan. And so that's why the immigration judge entered an order of removal against Sudan, because that was what Petitioner had conceded below. But isn't he in greater danger in Sudan than he'd be in South Sudan? Or Zadinka? No. And, in fact, actually, Your Honor, I asked a question about who will be removed to what countries. We do remove people to Sudan, or DHS does currently remove people to Sudan, but they do not currently remove people to South Sudan. So hopefully that answers your question. Well, I don't understand. What do you mean you don't? You say we don't remove people to South Sudan? DHS doesn't currently remove people to South Sudan, no. Why not? That's a policy determination that they make. Well, what's the basis of the policy determination? I don't know. Well, that's important, isn't it? What if he would be much safer in South Sudan and the immigration service just hasn't thought to find out whether that might be true? It's not important in this case because Petitioner has not been ordered removed to South Sudan. It's not at issue. But maybe he'd be safer in South Sudan. In which event, that's where he should be removed to, right? He has never claimed that he's a citizen of South Sudan. That's because he left the country before the countries split up, correct? It would be difficult for him to claim he's a citizen of South Sudan without – we would probably need to find out, wouldn't we? Well, removal proceedings took place after the countries had split. Yes, but he left the southern area of what was then the unified nation of Sudan. That's correct. Long before the split, correct? Yes. Okay. But at the end of the day, the only removal order that this Court is looking at is a removal order to Sudan. That's all we have on the record. Now, the Board did address – Well, that suggests an incomplete record. It's not because Petitioner never challenged the finding of removability below. He has to exhaust that claim if he's going to argue that the agency erred in finding a removal order on him. You're saying, what, he's given up his case completely? Well, he hasn't articulated anything before the agency, and the Board did note that he'd weighed down on appeal. So what is he doing with a lawyer? We appointed him, right? We appointed counsel for Mr. Arej, right? Correct. But you don't think he's entitled to a lawyer? No. Because he has nothing to argue, according to you. I didn't say he's not – He has nothing to argue. I didn't say he's not – He has nothing to argue. Well, he has nothing to argue right now, no. I don't believe so. Explain to me right now. Something he'll argue later, or what? The Court doesn't have jurisdiction to review what has been argued. I didn't say he's not entitled to counsel. Please don't put words into my mouth. I never said anything of that nature. Now, as far as the case that is before this Court and the Board's decision before this Court, as Your Honors have noted, there is no meritorious legal claim that would restore the Court's jurisdiction here because the criminal alien bar has kicked in. The criminal alien bar is Section 242A2C of the Immigration Nationality Act. There is no dispute that it's applicable. And as Your Honors know – Well, if he would be safer in South Sudan, isn't that where he should be sent? Not if he's not a citizen of that country, and he has never claimed to be a citizen of that country. Why? Why would it matter whether he was a citizen? That hasn't been litigated. He never claimed to be a citizen of South Sudan. Forget the citizenship. You can't just get removed to any random country unless there's a basis to it. It's not a random country. It's where he was born and where he may be a good deal safer than in the north. He conceded that he was a citizen of Sudan. Why do you keep talking about citizenship? Are you saying that we can only deport a person to a country where he's a citizen? Is that what you think? You can only remove him to where the removal order authorizes him to go. You're such a technocrat. You don't understand the human aspect of the case at all. Of course I do. This is a person who may be a good deal safer in South Sudan. Whether he's a citizen of South Sudan or not would only be important if somehow we have a rule that we can only deport people to the country of their citizenship, which we do not have such a rule. Your Honor, he has never claimed to be a citizen of South Sudan. He conceded that he was a citizen of South Sudan. You don't understand me. I do understand you. No, you don't, because I don't give a damn whether he's a citizen of South Sudan. Your regard to that is absolutely critical. I don't see that at all. There is no possibility of him being removed to South Sudan. There's no order allowing that. The agency couldn't do it if it wanted to. It doesn't have authority. But if we were to remand, the question could be revisited. So, Mr. Robbins, could I ask you to address the jurisdictional issue and particularly the authorities in Petitioner's Brief. I think it's around page 26 and note 16, in which we seem to have treated similar questions as ones over which we had jurisdiction. You're referencing the cases in Zeng and Ni and Ghebreyesus and Kebe. Yes. All of those cases are not applicable. You're doing better with the names than I am. All of those cases are irrelevant because all of those cases, in those cases the court was looking at whether or not the board abused its discretion. That's not the case in this case. You're barred from looking at abuse of discretion in this case because of the criminal alien bar. So the rationale of all those cases was essentially this. The court was saying our job on review is to determine whether the board abused its discretion. And if the board doesn't provide sufficient explanation or adequate explanation of what it's doing with the evidence, we can't do our job on review. So the legal error that the court found in those cases was that the board was rendering its own decision unreviewable. Well, how about, I mean, we've, I'm trying to think, excuse me just a second, but there's a case called Kyorkus against Holder that talked about this. And in essence, look, this is, we wrote that this line between legal questions which we can review and discretionary factual determinations that we cannot can be difficult to draw here. And so, and the site of that is 634 F3rd at 928. And given the virtual silence about Mr. Arege's evidence, and what we know are dramatic changes, famine, civil war, et cetera, in Sudan and South Sudan, I'm frankly pretty troubled. Well, there's a couple of things I would state with respect to your question. It seems there are a couple of things there. First, with respect to drawing the line between whether it's a legal question or a factual question, I don't think it's a very difficult line in this case, because as Judge Seitz noted, the evidence was considered. So the only question that's left is how the evidence was considered, and I think it's quite clear that that's a factual question. And just sort of if you follow it through logically, suppose you accepted Petitioner's argument and remanded saying that the board had error. If I look at your brief, I've looked at it. Have I considered it? Well, you haven't overlooked it or ignored it, which is the distinction that the courts have made. The distinction between leafing through it or just leaving it closed? What's the difference? I suppose if you didn't read the substance of it, that would be overlooking it. But there's no indication that that was the case here. The board clearly considered the substance of it because it talked about South Sudan, even though he wasn't removable to South Sudan. Why do you say he wasn't removable to South Sudan? Because there is no order of removal authorizing it. Presumably the board could have introduced, could have modified that, right? It could have. Doesn't it have the authority to do that? It could have. I probably would have remanded it on that basis if Petitioner had not waived his appeal of that issue. So the board did discuss that in its footnote. Now, with respect to the distinction between the legal and factual error, if you sort of follow it through logically, if you were to accept Petitioner's argument and say that the board legally erred here because its decision was insufficient, what would happen? It would go back down. The board would presumably say, okay, we'll give a better explanation as to why we did this. It would come back up, and you would be in the exact same position you're in now, unable to review the decision because of the criminal alien bar. Unless considerations suggested that actually there's a problem here. Well, we know they considered the evidence for two reasons, Your Honor. First of all, when Petitioner But I thought you suggested that they'd never remove him to South Sudan because not a citizen. No. I said they wouldn't remove him to South Sudan because there is no order of removability authorizing them to do so. Now, he did not claim to be a citizen. So they could remove him to South Sudan even though he's not a citizen. No. They can't? Why not? There's no order of removal to South Sudan. I'm not sure what I'm not being clear about here. I don't get it. They can't remove him. You seem to think you can only deport a person to a country of which he's a citizen. No. You can deport a person to any country that will take him. You can if there's an order of removal to that alternate country. But the removal order specifies Sudan. That matters. That means the agency can't remove him to other Such technicality is terrible. But it's a technicality that's relevant. Terrible. It's important. The agency can't remove him It's terrible. Think about it. I've thought about it, Your Honor. Well, you haven't thought right about it. Because you don't care what happens to this guy. That isn't true. You're just preoccupied with the fact that there isn't an order removing him to South Sudan. But that means he can't be removed there. It matters. I don't understand. I'm not quite sure what the court is worried about there. If he can't be removed to the country that you're worried about him being removed to. Forget it. You never understand. So forget about it. Well, I see I'm out of time. Time is up. Unless there are any other questions, I'll simply thank the courts for its time. Thank you very much. So, Mr. Robbins, you want another minute? Mr. Schneider. Mr. Schneider. Sorry. Just a few brief points on rebuttal, Your Honors. 1252A2D reserves jurisdiction over legal questions. In Joseph, Judge Hamilton, you wrote that it is a legal question to consider whether the BIA considers all relevant evidence of changed circumstances. And we submit that that question is before this court now, and it entitles Mr. Arej to relief. Furthermore, I know there's a lot of question as to the right country of removal. The whole point here is that remanding to the BIA for it to finally consider, with an analysis of the evidence of changed circumstances, we think will entitle Mr. Arej to reopen his removal proceedings. And we cited several decisions in our initial brief of the BIA that upon reopening the proceedings, it can correct the extent there was an error in the designated country of removal. And, again, that's one of the added benefits of remanding this case. Unless the court has any further questions. So he doesn't want asylum? No, he does, yes. I just mean that one of the added benefits may be to correct, but certainly the purpose, his main purpose in reopening, is to be able to apply for asylum, withholding of relief, or withholding under cap. Thank you. Okay, well, thank you very much.